Good afternoon, your honors. My name is Siobhan Sheridan-Ayala and I represent the petitioner Ms. Jacqueline Patricia Catalan-Matta and may it please the court, I wanted to present arguments to the court today about why Ms. Catalan-Matta deserves a remand for seeking a reasonable fear that she should be have been approved by the immigration court for seeking a reasonable fear so that she would have been able to present her case in withholding only proceedings. The question before the court today is whether substantial evidence compels a contrary conclusion to the immigration court's decision. The primary question before the court is whether Ms. Catalan-Matta is a member of a particular social group and whether she is deserving of denied Ms. Catalan's argument based on legal arguments that she was not making and he refused to accept new evidence contrary to Bartolome which indicates that there is a de novo review of the immigration judge's decision from the asylum office. He refused to accept new evidence and so Ms. Catalan attempted to file a motion to reopen after the decision was already made and in that motion to reopen it was denied based on the fact that the judge concluded that the evidence was not substantial enough to change the result of the proceeding. So we submit that the evidence was substantial enough and it's very substantial the persecution that she suffered her daughters Astrid Daniela Riz Catalan and Jacqueline Julius Riz Catalan were both murdered. There is a controlling precedent that appears to be directly on point. Henriquez Rivas there are some important differences between Henriquez Rivas and Ms. Catalan's case but there those do not undermine her eligibility for withholding of removal based on those differences. Specifically her case is high profile. She submitted evidence that her the her daughter's murders were publicized both in the printed press as well as the television. She was not the case never was brought to trial nevertheless she and her husband were placed in the witness protection program in Guatemala. The fact that Guatemala has the law and in Henriquez Rivas the court relied on the Salvadoran law to find that their the criminal witnesses were a particular social group because of that law that provided for witness protection. She and her husband made complaints about the daughter's murders in three separate locations. They made a complaint with the police in the local locality with the national public ministry office and then the office against femicide. So they were actively pursuing the investigation of their daughter's murders on multiple fronts and they received I see you want to ask a question. I would like to ask a question because it seems to me that the IJ here assumed without deciding everything that you're arguing here I think that Ms. Catalan was was one in one or both of the the groups the family or the witnesses against you know the cartel and instead the IJ focused and determined that Ms. Catalan had failed to establish that her prosecution was on account of a protected group because it was based on a like of a personal nature a personal vendetta is that correct? Well it's it's hard to understand or know exactly what the IJ was thinking because in looking at the orders they just cite to case law and so it's it's really difficult to know whether or not he he thought what the basis was. In terms of nexus that is that what the court is is requesting information I have some thoughts about nexus. Yeah I'm just trying to figure out what what do need to decide here because I think is it you know the government I think it's the government that's arguing that the panel should just address only the nexus question and I thought it was the government but maybe and remand to the IJ for a determination whether Ms. Catalan established with the nexus finding so I'm just trying to figure out what what is our focus right now and what's the remedy that you are seeking? Okay well the the yes your honor the remedy we're seeking is that the case be remanded to the immigration judge for um with instructions that she uh does meet a reasonable feel uh threshold um and uh regarding nexus um she I know the briefs or excuse me their responsive briefs but um I just don't see that that's supported in the record um I just there was asylum officer's decision and then there was the immigration judge's decision and it seemed as if the immigration judge relied heavily on the asylum officer's decision and that the nexus they said basically that she wasn't persecuted on account of a protected ground so that either is I mean nexus or it could mean that she belonged to a social group so to me it's not clear and perhaps a remand to clarify that issue would be appropriate but regarding nexus um yes Barajas Romero is exactly on point your honor for withholding of removal and the requirement is only that the persecution be on account of a protected ground it doesn't need to even be one central ground as it is an asylum and um miss uh Katalan Mata and her husband received threatening phone calls where they said that they were supposed to stop basically being members of the particular social group of of witnesses um in a criminal investigation were told to stop investigating or they would have to eat the same dirt that their daughters ate I mean that was one of the the more graphic um threats that they received okay so let me ask you about the the torture uh the cat fling um so seems to me there's some question on whether that has been waived or not on on your your your argument regarding the negative reasonable fear determination regarding uh torture uh so has that been waived by you since it wasn't uh uh really presented in the opening brief um no your honor it was raised in the motion to reopen it was raised before the immigration judge and it was briefly raised in the opening brief but it still is before the court um as a matter of justice the court can still review that issue and um the the the issue of torture uh is before the court in terms of the fact that their daughters were murdered and there was there is uh she um let me just back up but miss katalan was found to be credible by the immigration judge or excuse me by the asylum office and the immigration judge doesn't say anything about credibility or negative credibility finding and so one of the things that miss katalan says is that the mayor in her town was connected with the drug cartel organization who was responsible for her daughter's murders so that does implicate um the uh the guatemalan government additionally she also testified that um the the uh when can you back up this for a second is what you just said so on the on the cat claim um i'm wondering about the the evidence in the record to establish acquiescence by public officials and you noted that she said that she thought the mayor of the town had some connection to the cartels nothing more i mean that may be true but does that mean that the government's acquiescing in what happened to the daughters or any threats to her and then that's um juxtaposed to the government of guatemala putting her in a witness protection program warning them of danger and taking steps that appeared as if they were trying to protect her and her family as opposed to acquiescence acquiescing in torture or past persecution yes jr i think you make a very important point um that's often brought up in cat claims um the i think it would be impossible or it's incorrect to say that the entire government of guatemala is corrupt and there are certainly large facets of the government of guatemala who are not corrupt but um there are persons in the government that are corrupt and the corruption is so widespread that um most of murders are not prosecuted in guatemala and the no one never knows whether when one is reporting an incident to the police whether that will be taken back to the offenders or what for bribes or whether that will be taken to successful prosecution and the most common situation is that things are not prosecuted the impunity for crimes is very high and that is part of the u.s department of state human about that um the corruption so while on the one hand there are there is it's like the left hand doesn't know what the right hand is doing of the government so on the one hand they are receiving assistance from the guatemalan government they are in witness protection they're frankly told to leave the country because it's not safe who told them to leave the police the guatemalan police and and they told them to leave because why the investigation had been compromised and and so your contention is that that is that acquiescence or is it a sort of a resignation uh is it a warning we can no longer protect you and would a claim that we are we are no longer able to protect you um satisfy the acquiescence of the government uh prom i think that's an excellent question your honor um certainly turning a blind eye is the standard uh for whether or not someone meets the threshold for protection of the convention against torture and if they are resigned to the fact that an investigation has been compromised i would say that would constitute turning a blind eye to um to the torture um instead of perhaps moving them to another location or there's other options that they could have taken to protect miss katalan and her husband uh miss ayala i was just wanted to ask a follow-up question on that i thought it was um somebody from the department of ministry or something who was overseeing the witness protection program and not local officials but can you tell me what do you know about who is overseeing the witness protection program uh your honor i'm not sure um who was actually administering it i know it is a federal law the witness protection program but i'm i don't know and i don't think it was in the record as specifically who but i do know that there was um there was investigations that were happening with a typical taquiltecan um local office and then the national ministry office let me ask you a question about due process before your time is up um are you you're i don't think you're arguing that ij was required to consider the documents that miss katalan submitted at her regional hearing um it's it's supposed to be i guess at the ij's discretion uh but i have some question here did the ij knew that he had that discretion based on what i read in the transcript what's your take there well your honor um and i didn't get into this because i don't want to sidestep some of the more important issues but i mean i think the immigration judge was wrong and he said that he couldn't consider the evidence because it wouldn't have been fair to the asylum office and i think what really he should have been looking at was whether or not it was fair to miss katalan um that the proceedings are for her and not for the agency was there anything in what the ij said or did that suggested um that uh he didn't have uh he thought he didn't have jurisdiction to reopen in other words it's distinct from the question of documents did the ij appear to recognize that he did have discretion to reopen yes it appears that he does and he um he uh indicated that he denied the motion to reopen based on matter of bickford i believe it was um back for excuse me and also uh that it would have not relied resulted in substantially different results and then he cited henrikas as a matter of lea okay thank thank you i'll give you a minute or two for rebuttal thank you very much may it please the court my name is jesse lorenz and i represent the u.s attorney general in this case uh there are two pfrs and uh before this case there are two petitions for review before this court in this case uh the first involves the immigration judge's concurrence with the negative reasonable fear determination uh substantial evidence supports their or the immigration judge's decision uh regarding withholding of removal uh katelyn established no nexus to a protection a protected ground um and i think and specifically uh in looking at her interview before the asylum officer um she basically talked about revenge um that miss sosa wanted revenge on her daughters and then later the people miss sosa hired to kill her daughters wanted revenge on her um as this court's held in cases like magical uh revenge is not um the motive that is protected uh under the immigration national nationality act but you can have two races can't you i mean um and yes but magical says that too yeah and i think the there's never really any mention of anything other than a motivation of revenge i mean the the interview lasted about six hours long um she actually had two interviews before an asylum officer one was about an hour the other one was about six hours long now there were some breaks in there but approximately six hours and um the asylum officer asked a lot of questions about the motivation of the people who killed her daughters and every time it came back to a motivation of a case of revenge um which draws no nexus to a protected ground um moving on to to cat i mean i think that is the the only issue before the court i mean the asylum officer and immigration judge made no determination on the particular social groups the cognizability of those groups so the case told the case fails total on the nexus finding um moving on to cat um as we argued in brief she waved cat in her opening brief even if she had sorry go ahead well i just i guess i just want to follow up a little bit more on that because it certainly seems possible that the local cartel members were targeting miss kathalon based on a personal conflict but as i just mentioned you know we have two two possible basis i have a hard time seeing how how that kind of conflict would prevent miss kathalon from also showing persecution based on membership in a particular social group um and that's not the government's argument it is possible but i think the record has to compel it in this case and there's just nothing in this record that would compel that conclusion i mean her own interview before the asylum officer is it was all about revenge so there's just nothing in there that would prove that that it was for a reason other than revenge even under her own theory of the case well but she said she was pushing for the investigation to continue and to try to get the cartels uh isn't that correct well i mean that's what it appears from the interview notes that she was pursuing an we're interested in her it was revenge for her pursuing that investigation um but that doesn't tie it to a social group of her family uh i just you know there's just nothing there other i mean i also this part has to keep in mind this is the substantial evidence standard review there's nothing compelling a conclusion that it's anything other than this motivation of uh position that ms kaplan's placement in the witness protection prevents a finding of government acquiescence uh it seems to me that ms kaplan is alleging that other officials specifically uh the local police acquiesced in in the local cartels activities sure and first i think our waiver argument is well supported she didn't advance the claim in her opening brief but also um i think we have i just but we have case law i think that says that if you address this in your brief which you did then the waiver's not there so that's why i'm asking this okay nope and that's that's fair um i i'm aware of the case law um but i would say in response to your first question about acquiescence again keeping in mind the substantial evidence standard review but also it does show a willingness and and i think with the acquiescent standard is is a willful blindness or breach of duty and here it can't be said that these officials who are trying to protect her and her family reached their duty to do so and in fact they seemed like they went out of their way to warn her council what they made council what do we do when the police say you better leave that's her that's her claim um and we sort of have to take her word for it at this point um and and they and they said you know we we can't protect anymore you ought to leave the country now that's not that's that's something less than sort of willful blindness or you know absolute acquiescence we're going to be part of the the pocket of the cartel we see those kinds of allegations uh from time to time but if they've said you know we've done all we can and the system is now rigged against you and your lives are in i don't think so um i mean i think that does become a tougher question uh i mean i what i don't know what happens when the government has reached the end of its resources you know and i don't know if that is something that's contemplated by acquiescence i mean in in the in the context here i mean there were efforts it wasn't like they were accepting of it or consenting or you know turning a blind eye to it they were trying um and i think some of the caseload that this court has is you know even if no arrests are made or no you know it's not perfect it can't be perfect all the time but if there's an effort and if even if no arrests are made it doesn't mean that they're acquiescent to it uh if you know if we had a situation let's think of let's think of the disaster in rwanda a number of years ago where there's a total breakdown in the government and you have two warring tribes uh and we have an ethnic cleansing situation there may not be government acquiescence in the sense that the government has become your person you're you're a persecutor but if the government is helpless to prevent anything i i don't think that we would i don't think we would have denied those that those people had had uh cat claims sure and i i mean i think that's more of an extreme hypothetical because it was going to be so wide scale um but i i'm just trying to get you to admit the principle and then and then we'll come back down to a lot of abstraction um yeah i mean i if you know i guess it's hard to say in that situation would asylum law be applicable or refugee type situation be applicable and i and i don't know enough about refugee law to really answer that question but um as far as cat protection goes it does require some sort of government acquiescence if you were that you have that here i guess if you were in a cartel controlled area of mexico in which you had maybe some local corruption but just simply again a lack of resources uh we might not say that the mexican government had acquiesced they weren't agreeing that the sinaloa cartel was a really good idea and they could do whatever they wanted but if the government is powerless to protect to to prevent anything or to protect you surely that would satisfy uh the cat the cat requirements wouldn't it well you know and i don't that's i i i definitely have dealt with the uh area of law and cat protection we're talking about like the cartels in mexico and i mean i don't think it's just that they can't necessarily control the cartels there has to be like kind of a affirmative breach of their duty to protect the person and i don't know if you can say there's like an affirmative breach here where they're trying to protect her and basically they're saying okay this is this is getting really bad for you so we can't really they're not they're not like turning a blind eye to it they're aware of it they're acknowledging that they were trying to help her um i think that's a little bit different than saying they're you talk about especially um you know you talk about an affirmative duty that they're breaching it i don't know if you can say that here they were protecting her um and i think in this hypothetical you raised about the mexico mexican drug cartels it's not necessarily that the government is totally effective or there's resources in certain areas it has to be like kind of an affirmative breach of duty and i don't know if you you get that here in this context especially with this evidence i mean they're in a there are they're in a shelter or some sort of witness protection program but um then at some point that that unravels but that's not an affirmative breach of duty and in fact they gave them a warning um so i don't know if that constitutes a cat claim uh okay counsel i've got a dual different a little bit different question and um i think it's a pretty simple question but also i also think it may appear to be kind of a um i've been on the court for a long time i i don't remember seeing reasonable fear reviews by this court until the last couple of years we always got the asylum withholding cat claims uh and that's the predominance of the of the immigration cases that we see if we were to decide that that um that uh that evidence compels this gets to apply for withholding and then we go to the full uh to the full circus is that is that what happens so if it's remanded here i'm i'm not entirely certain the procedural i mean there's the regulations are pretty clear about what happens when an asylum officer finds no credible fear or an asylum officer finds a credible or a reasonable fear i'm sorry i'm mixing them up but no reasonable fear or a reasonable fear then if there is a but if there is no reasonable fear then it goes grant withholding or not grant withholding or grant asylum or not grant asylum right the immigration judge or yeah the ij and then the bia would have would have a shot at it after that well sure so if the immigration judge concurs with the reasonable fear as here it comes to this court if not then they would go to full withholding of removal proceedings uh and then yes you would see the more um what you kind of noted is a reasonable fear interview is really just a screening interview to see if we're going to give you the full-blown treatment yes and it's used in very limited circumstances like here where we have a reinstated order of removal for somebody who's been previously ordered removed and that order of removal has been executed uh then it goes for kind of a expedited screening procedure it's not meant to be a full but i would note if we were to disagree with the ij's decision here that's not the same as disagreeing with the ij and the bia's decision in a in an asylum withholding cat claim uh that had gone through a full proceeding no that would be different yes it would be remanded to the only to the ij it wouldn't go to the board but um i mean i guess the judgment of our court in this she should have been allowed to proceed let her let her go through and then you get to make the credibility findings you get to make whatever evidence she wants to come she can find her husband in the process you can consolidate the cases whatever whatever whatever further things we want to do she gets a lawyer and so on it becomes a lot more formal process well i i mean she was not denied a lawyer here i mean they asked her if she wanted a lawyer before the asylum so she said no much much more formal process it is it is a much more formal process and i but these are to quickly and expeditiously screen people and i think here i mean her testimony was accepted as credible her story was believed it's just that she didn't establish any nexus and i mean i think even if you look at the evidence that she submitted with her motion to reopen it it doesn't change the fact that there's no there's no motive that she's identified other than revenge so even and this is hypothetical obviously but in more formal proceedings i don't see how that changes the outcome here i mean i think we're still with a claim that has revenge as the motive and that's just not a protected ground um and and these kind of proceedings or in more formal removal proceedings um i just also would like to say a couple things about her due process claim i think she was afforded all the process she was doing i mean i think one thing that you know she's she's saying that she wasn't allowed to submit evidence but one thing that i would note here is that she did have two interviews before an asylum officer one was one hour the other was six hours during her hearing before the immigration judge the immigration judge summarized her claim he read it back to her she agreed with it he asked her if she wanted to say anything further she said yes i'm afraid but didn't add anything else to her claim then her attorney was allowed to present argument um and and so she was afforded an opportunity to add more to her claim before the immigration judge he just didn't consider the evidence that was not before the asylum officer but but the um miss kapalan wanted to um introduce some documents is that correct at the hearing did i understand that correctly that is correct yes and and the immigration judge said no and well yeah and but he didn't say no i mean he didn't end up not allowing that but in the hearing he said i cannot i believe in my own review then entertain new evidence and that's at car 156 57 um and so it seems to me that he didn't or i'm trying to figure out you know because the way it comes across is that he didn't know he could uh allow new evidence and to me that that might be a legal error and i just wanted to ask you about that well i guess i read that as more as he didn't think it was fair to the asylum officer and and that's not i guess technically the correct way of looking at it but i mean at the at the bottom he wasn't required to accept that evidence i mean um and like i said he did afford her the opportunity to add to her claim through testimony but she said there was nothing else to add other than that she was afraid um which like i said she had already established um your honors i can see my time is up so um we would ask that this court uh affirm the decision below all right unless there's any more questions i'm sorry yeah thank you miss aiella i think you're on mute you're muted thank you um it's an ar35 where she miss katalan testifies that she was threatened a number of times by phone and told quote not to investigate her daughter's death because she would be next so that's not a case of revenge that is a case where she's clearly being persecuted because she's pursuing an investigation um regarding the cat claim um i don't think that we can pick sides in in the government and say that this side of the government is helping and protecting her when it's the person who is persecuting her is a member of the government it's a mayor and he is he himself like i said he's a member of the government so i think just the fact that he himself is acquiescing to her torture should be sufficient um what was the evidence that he was acquiescing beyond he had some connection to the cartel did he do some specific yeah when when the her um house was shot up the people were in a car that belonged to the mayor's office um and then briefly i just wanted to uh talk about um the fact that she uh a matter of lea the attorney general talks about the fact that most family any nuclear family so do not qualify social group because it doesn't qualify under the social distinction requirement um because she was high profile because the murder was or high profile we would submit that she does qualify and the social distinction uh requirement is met she was recognized in mexico she was recognized in yuma related to the murder of her daughters so based on these uh facts and we ask that the court remand the case to the immigration judge for a reasonable fear um approval thank you thank you very much miss ayala mr lorenz appreciate your oral argument presentations here today the case of dr patricia kapala mata versus william barr is submitted thank you uh that concludes uh our calendar i want to thank everybody especially our technical support that we received here today um and so we are adjourned thank you
judges: Bybee, Murguia, Bade